# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                  Case No. 8:24-cr-456-WFJ-AAS

REY DANNY VELEZ,
            Defendant.
_____/

## ORDER

Before the Court is Mr. Velez's motion to suppress evidence resulting from a search of his Google account, and any evidence derived therefrom. Dkt. 57. The Government has responded, and Mr. Velez has replied. Dkts. 68, 69. On May 5, 2025, the Court held a hearing on the motion. Dkt. 73. For the reasons explained below, Mr. Velez's motion to suppress is due to be denied.

## BACKGROUND

While executing a search warrant at Mr. Velez's residence on August 29, 2024, law enforcement located four explosive devices made from PVC pipe, a black-powder mixture, and metal BBs. Dkt. 68 at 1. The same day, investigators post-*Miranda* interviewed Mr. Velez. *Id.* He stated he built the devices five years prior, although his wife claimed he started making the devices months prior.[1] Dkts. 68 at

---

[1] At the hearing on the motion, an ATF agent testified that she recalled Mrs. Velez saying she saw the devices months prior, not that Mr. Velez started making the devices months prior. Mrs.

1

1; 68-1 ¶ 10. Mr. Velez said he intended the devices to be the propulsion function of unfinished homemade rockets. Dkt. 57 at 2. He said the devices were science experiments for his children, and he made them with instructions for "sugar rockets" on YouTube. *Id.* His wife confirmed that he learned a lot from the internet. Dkt. 68-1 ¶ 10. Mr. Velez also shared that he and his wife were "'preppers'—those who prepare for end-of-times scenarios." Dkt. 57 at 2. He lastly told law enforcement he had been in the military, although a review of military records revealed he had not. *Id.* The devices are this, in regular and x-ray photos:



On September 9, the United States charged Mr. Velez with possessing an unregistered destructive device in violation of 26 U.S.C. § 5861(d). Dkt. 68 at 1–2. ATF agents took Mr. Velez into custody on September 13 when, in another post-*Miranda* interview, he directed law enforcement to specific YouTube videos he claimed taught him how to build the devices. *Id.* at 2.

---

Velez's statement that Mr. Velez started making the devices months prior comes from the affidavit in support of the application for the search warrant. Dkt. 68-1 ¶ 10.

On October 16, ATF agents submitted two requests via Google's online portal to preserve data for accounts belonging to Mr. Velez. Dkt. 57 at 2. At the hearing on May 5, 2025, an ATF agent testified that she submitted the preservation requests because, in her training and experience, subjects of non-covert investigations such as this one may know to attempt to destroy evidence. To her understanding, preservation prevents data from being deleted from the account as a whole. She testified that, for example, a user could delete information from their Google account and, to them, it would appear to be deleted. But if that information had been preserved at the Government's request, the Government would still be able to see that information from its view; that information would not be deleted.

The agents' requests sought to preserve extensive data: access log activity, Google Calendar, Google Drive, contacts, Gmail, subscriber account information, Google Chat, Google Pay, Google Photos, location history, "My Activity," Google Voice, and YouTube. Dkt. 57 at 2. The preservation requests included a date range of January 1, 2019, to August 30, 2024. *Id.* By October 17, Google responded that it had preserved the data in accordance with 18 U.S.C. § 2703(f), and would continue to do so for ninety days. *Id.* at 2–3.

On October 22, a grand jury returned a one-count indictment charging Mr. Velez with possessing an unregistered firearm in violation of 26 U.S.C. §§ 5861 and 5871. Dkt. 68 at 2.

3

On October 25, the Government obtained a warrant to search Mr. Velez's Google account, which proceeded in two steps. Dkt. 68-1 at 24–29. First, the warrant identified the information to be disclosed by Google. *Id.* at 27–28. The warrant enumerated categories of data for Google to provide, although the list captured essentially everything that would be in a Google account (*i.e.*, account information, Android information, evidence of user attribution, documents, Gmail, Google Photos, Play Store, and search history). *Id.* Only "account information," "Gmail," and "search history" contained the temporal limitation of January 2019 to August 2024. *Id.* The remaining categories included no temporal limitation. *Id.* And ultimately, the temporal limitation was inconsequential as it appears Mr. Velez created the account in March 2019. Dkt. 57 at 5.

Step two of the warrant established what the Government could search for and seize within this universe of data provided by Google. Dkt. 68-1 at 28–29. The warrant authorized the Government to seize all information "that constitutes contraband, evidence, and instrumentalities of violations of possession of an unregistered NFA [National Firearms Act] weapon, in violation [of] 26 U.S.C. § 5861(d), committed by Rey VELEZ which pertain to the manufacturing, possession, and use of destructive devices." *Id.*

On November 5, Google produced the data in response to the search warrant. Dkt. 57 at 5. Then, an ATF agent reviewed everything. *Id.* At the hearing on May 5,

2025, she testified that she decided what to seize as evidence based on the scope of the warrant, and anything she seized would be in her notes and two written reports. She took the notes while reviewing the YouTube search history. She used key word searches such as "sugar," "rocket," "bomb," "explosive," and "weapon," and recorded anything relevant to the investigation. Many of the key words she chose came from what Mr. Velez stated he watched on YouTube. Other key words were derived during her review of the entire YouTube search history. The ATF agent also summarized her observations from the YouTube search history in one of the reports of investigation. Dkt. 68-2.

The other report summarized the images she observed pursuant to the warrant. Dkt. 68-3. Specifically, she noted images of Mr. Velez in military garb, and images of "prepping gear" that included various survival materials. She testified to seizing these photos as evidence of Mr. Velez's state of mind, and in light of his claims that he intended to make experimental rockets rather than weapons. At the hearing, the Government indicated that all fruits of this search warrant are presently in this record.

## DISCUSSION

Mr. Velez's motion to suppress argues that the preservation request the Government sent to Google was a "seizure" under the Fourth Amendment and, because it was warrantless, it was unconstitutional. Dkt. 57 at 1. He then argues the

search warrant the Government did obtain to search the Google data was overbroad, lacking in probable cause, and so generally deficient that even the *Leon[2]* good faith exception does not apply. *Id.* As such, Mr. Velez seeks to suppress the contents of the Google account and any evidence the Government derived therefrom. *Id.* at 2.

## I. The preservation request

Under the Stored Communications Act ("SCA"), "[a] provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process." 18 U.S.C. § 2703(f)(1). Those records shall be preserved for ninety days, and shall be preserved for an additional ninety days upon the government's request. § 2703(f)(2).

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). In general, "seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless . . . accomplished pursuant to a judicial warrant,' issued by a

---

[2] *United States v. Leon*, 468 U.S. 897 (1984).

neutral magistrate after finding probable cause." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)).

Here, preserving a copy of the data already available to Google on its servers did not effect a seizure of Mr. Velez's property. Mr. Velez retained the ability to use his account, and the Government could not obtain any of the preserved information without further legal process. Google essentially took a snapshot of the data it had at the time it received the preservation request. This is not a seizure. *United States v. Rosenow*, No. 17CR3430 WQH, 2018 WL 6064949, at *10 (S.D. Cal. Nov. 20, 2018), *aff'd on other grounds*, 33 F.4th 529 (9th Cir. 2022), *opinion amended and superseded on denial of reh'g*, 50 F.4th 715 (9th Cir. 2022), and *aff'd*, 50 F.4th 715 (9th Cir. 2022) (finding a preservation request pursuant to Section 2703(f) was not a Fourth Amendment seizure).

To any extent the data preservation was a seizure, the good faith exception counsels against suppression. In *Illinois v. Krull*, the Supreme Court explained that applying the exclusionary rule to suppress evidence is not the appropriate response when law enforcement acts in objectively reasonable reliance on a statute, even if that statute is later found unconstitutional. 480 U.S. 340, 349–50 (1987). "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. . . . Penalizing the officer for the legislature's error, rather than his own, cannot logically contribute to the deterrence

7

of Fourth Amendment violations," which is the "prime purpose" of excluding evidence. *Id.* at 347, 349–50 (citations and internal quotation marks omitted).

The agents in this case acted in reasonable reliance on the SCA. They requested that Google preserve the account data in its possession until they could obtain a search warrant pursuant to Section 2703(f), which they had no reason to believe was clearly unconstitutional. *See United States v. Korte*, 918 F.3d 750, 758 (9th Cir. 2019) (finding the good faith exception applied when the Government reasonably relied on the SCA); *United States v. Warshak*, 631 F.3d 266, 288–89 (6th Cir. 2010) (same); *United States v. Zwiefelhofer*, No. 2:19-CR-150-SPC-NPM, 2023 WL 4931899, at *3 (M.D. Fla. Aug. 2, 2023) (same). The good faith exception applies to prevent the exclusionary rule.

Mr. Velez argues the good faith exception under *Krull* applies only when officers reasonably rely on statutes authorizing warrantless administrative searches, which Section 2703(f) does not, Dkt. 69 at 7–8; however, he construes the rationale of *Krull* too narrowly. First, and heretofore, Mr. Velez has suggested that Congress's authorization in Section 2703(f) *does* ultimately effect a warrantless seizure of property, which is analogous to *Krull*. But more importantly, *Krull* and courts thereafter have articulated the central rationale that holding officers responsible for the legislature's mistakes does not deter police misconduct, so evidence seized in reliance on a statute violating the Fourth Amendment need not be suppressed. 480

U.S. at 349–55; *Korte*, 918 F.3d at 757–58; *Warshak*, 631 F.3d at 288–89. This principle fully supports the good faith exception in this case. Congress empowered government officials to request the preservation of data per Section 2703(f), and there is no reason the agents in this case should not have relied on that judgment. *Zwiefelhofer*, 2023 WL 4931899, at *3. On the present facts, the exclusionary rule does not apply to the preservation request.

## II.    The subsequent search and the *Leon* good faith exception

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Evidence may be excluded if these requirements are not met, although this rule is exercised sparingly. *United States v. McCall*, 84 F.4th 1317, 1323 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1042, 218 L. Ed. 2d 193 (2024). The good faith exception applies to save evidence obtained by an officer acting in objectively reasonable reliance on a deficient warrant. *Id.* Pertinent here, the good faith exception will not apply if a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid," or if a warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (citations and

9

internal quotation marks omitted). "In doubtful or marginal cases, suppression is inappropriate." *McCall*, 84 F.4th at 1323 (citation and internal quotation marks omitted).

## A. Particularity

The Fourth Amendment's requirement that a warrant "particularly" describe the place to be searched and things to be seized sought to end the colonial use of a "general warrant," which permitted "exploratory rummaging" through one's belongings. *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017). Even so, "[i]t is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982).

Mr. Velez relies on *United States v. Blake*, 868 F.3d 960, 973–75 (11th Cir. 2017) and *United States v. McCall*, 84 F.4th 1317, 1327–28 (11th Cir. 2023) to first argue that the warrant here was so facially deficient that it could not have been reasonably considered valid. Dkt. 57 at 22–25. In both cases, the Eleventh Circuit urged the importance of subject-matter and especially temporal limitations in search warrants for data, but ultimately found that the good faith exception applied.

Mr. Velez then attempts to distinguish the warrant in this case from the reasons the good faith exception applied in *McCall*. Dkt. 57 at 26. He first argues that this warrant unreasonably included "contraband," which practically could be only child pornography or obscenity on a computer, and for which there was no probable cause in this case. *Id.* He argues that the good faith exception exercised in *McCall* was bolstered by the only two and a half months of data actually in that iCloud account, whereas the five years of data here is much longer. *Id.* He contrasts the warrant in *McCall* requiring the disclosure of categories of data that were tailored to the specific crime, with the warrant here that required Google's initial disclosure to include most data in the account. *Id.* He lastly contrasts the close connection between the phone and orchestrating the robbery in *McCall* with the connection, or supposed lack thereof, between Mr. Velez's Google account and his construction of destructive devices. *Id.*

*Blake* and *McCall* indeed counsel that the warrant in this case could have been sharper, but it was not so facially deficient that law enforcement could not have reasonably presumed it to be valid. First, the warrant's inclusion of the word "contraband" does not irredeemably broaden this warrant when read as a whole. The warrant authorized the Government to seize all information "that constitutes contraband, evidence, and instrumentalities of violations of possession of an unregistered NFA weapon, in violation [of] 26 U.S.C. § 5861(d), committed by Rey

11

VELEZ which pertain to the manufacturing, possession, and use of destructive devices." Dkt. 68-1 at 28–29. Read together, contraband, evidence, and instrumentalities all pertain to possession of the weapons. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021) ("[W]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series." (citation and internal quotation marks omitted)). "Contraband" does not refer to child pornography here, and does not render the warrant facially deficient. *See Leon*, 468 U.S. at 923.

The provision of five years of data does not destroy the good faith exception here either. For one thing, the warrant in *McCall* did not have any facial time limit, while, here, the "account information," "Gmail," and "search history" categories to be produced by Google did. 84 F.4th at 1328; Dkt. 68-1 at 27–28. Moreover, the January 2019 to August 2024 temporal limitation in this case aligned with Mr. Velez's admission that he made the explosive devices five years prior, and Mrs. Velez's recollection that either he started making the devices recently or she saw the devices recently. Dkts. 68 at 1; 68-1 at 5. Even the categories of data produced without a temporal limitation dated back to only March 2019, when it appears the account was created. Dkt. 57 at 5. Thus, as a practical matter, the ATF agents obtained data for the time they suspected Mr. Velez to be in possession of illegal weapons. *See McCall*, 84 F.4th at 1328 ("Any temporal limitation that satisfied the

particularity requirement likely would have covered that amount of time."). The warrant was not so lacking in temporal limitation that officers could not reasonably presume its validity. *See Leon*, 468 U.S. at 923.

The data disclosed by Google in step one of the warrant also does not preclude the good faith exception. *McCall* likewise noted that, although the officers there were allowed to search only seven categories of data tailored to the specific crime under investigation, "those categories encompassed most of the [iCloud] account's conceivable data." 84 F.4th at 1328. And importantly here, step two of the warrant limited the Government's seizure to only information that was contraband, evidence, or instrumentalities of possession of the weapons. Dkt. 68-1 at 28–29. Courts often recognize two-step warrants as sufficiently particular. *See United States v. Lee*, No. 1:14-CR-227-TCB-2, 2015 WL 5667102, at *9–10 (N.D. Ga. Sept. 25, 2015) (finding Google's disclosure of the entire contents of an email account and law enforcement's subsequent targeted seizure was sufficiently particular, and collecting cases). The warrant was not so facially deficient that agents could not reasonably presume its validity. *See Leon*, 468 U.S. at 923.

Finally, Mr. Velez's Google account was connected to the construction of the devices, making it an appropriate subject of investigation. *See McCall*, 84 F.4th at 1328. Mr. Velez expressly advised that he learned how to make the explosive devices from videos on YouTube. Dkts. 57 at 2; 68 at 2. His wife confirmed that he learned

13

a lot from the internet. Dkt. 68-1 ¶ 10. The affidavit in support of the application for the search warrant further explained that those who engage in criminal activity commonly take photographs or videos of their conduct, and commonly attempt to evade law enforcement with multiple emails, phone numbers, accounts, and concealment applications on their phones. *Id.* ¶¶ 35, 31, 38. The ATF agents "reasonably could have believed that [the provided Google data] fell within the practical margin of flexibility for [their] broad investigative task." *McCall*, 84 F.4th at 1328 (citing *Wuagneux*, 683 F.2d at 1349). In short, the warrant was not so facially deficient in particularizing the places to be searched or things to be seized that officers could not reasonably presume its validity. *See Leon*, 468 U.S. at 923; *Blake*, 868 F.3d at 975 ("And while the warrants may have violated the particularity requirement, whether they did is not an open and shut matter; it is a close enough question that the warrants were not 'so facially deficient' that the FBI agents who executed them could not have reasonably believed them to be valid."). The good faith exception applies.

## B. Probable cause

At the outset, "[p]robable cause is 'not a high bar.'" *United States v. Delgado*, 981 F.3d 889, 897 (11th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). "Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that 'there is a fair probability that

contraband or evidence of a crime will be found in a particular place.'" *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Further, to find that the good faith exception does not apply, "the affidavit must be so clearly insufficient 'that it provided "no hint" as to why police believed they would find incriminating evidence.'" *McCall*, 84 F.4th at 1325 (quoting *United States v. Morales*, 987 F.3d 966, 976 (11th Cir. 2021)). "[T]he officer's judgment must be more than just 'mistaken'—it must be [] 'plainly incompetent.'" *Id.* (citation omitted).

Mr. Velez's position that the affidavit supporting the search warrant was so lacking in indicia of probable cause that official belief in it was entirely unreasonable is not tenable. As an initial matter, and as discussed above, the inclusion of the word "contraband" in the search warrant did not require the affidavit to show probable cause for an offense such as child pornography. "Contraband" referred to possession of the weapons. *Supra* at 11–12.

The affidavit in this case provided sufficient "hint" as to the connection between Mr. Velez's Google account, and the construction and possession of illegal weapons. The affidavit offered evidence that Mr. Velez used the internet to help him construct explosive devices. It explained that law enforcement discovered the probable pipe bombs at Mr. Velez's residence in August 2024. Dkt. 68-1 ¶ 8. Mr.

15

Velez stated he made those devices five years ago, and shared he learned how to make the devices by searching online. Dkt. 68-1 ¶ 11. Mrs. Velez stated he made the devices just months prior, and also confirmed he learned a lot from the internet. Dkt. 68-1 ¶ 10. In a second interview, Mr. Velez directed law enforcement to specific YouTube videos he claimed taught him how to build the devices. Dkt. 68-1 ¶ 19. The affidavit connected the internet and the explosive devices. *See United States v. Robinson*, No. 206CR223-MEF WO, 2007 WL 601936, at *6 (M.D. Ala. Feb. 21, 2007), *report and recommendation adopted*, No. 2:06-CR-223-MEF, 2007 WL 1284910 (M.D. Ala. Apr. 30, 2007) (finding a warrant to search a computer supported by probable cause when the affidavit explained, among other things, that the internet contains websites explaining how to construct homemade destructive devices).

The affidavit then explains how the ATF agent sought to determine whether Mr. Velez had a Google account that would contain evidence of his internet activity. The agent's subpoena to Google confirmed the existence of an account linked to Mr. Velez, in which there was a fair probability of finding evidence of his criminal conduct. Dkt. 68-1 ¶¶ 24–26; *see McCall*, 84 F.4th at 1325 (finding the good faith exception applied because the affidavit sufficiently linked the defendant's cell phone, iCloud account, and crime).

16

The affidavit also sufficiently supported the temporal and categorical scope of the warrant. As to the time period for which the suspected criminal activity occurred, Mr. Velez's own admissions, and his wife's recent sightings, indicated he had been unlawfully possessing pipe bombs for five years at the time they were seized. Dkt. 68-1 ¶¶ 10, 11. As to the breadth of data sought, the ATF agent explained that, based on her training and experience, many kinds of data reflect involvement in criminal activity. She expected she would see evidence regarding destructive devices in many different forms. For example, criminals often take photos and videos of their crimes, and she expected she would find photos and videos of bomb manufacture, possession, and possibly explosion. Dkt. 68-1 ¶ 35. For another example, Google offers alternatives to word processing and spreadsheet software, and she believed she would find notes on bomb making materials. Dkt. 68-1 ¶ 33.

At bottom, the affidavit was not so "bare-boned" that an officer would have to be "entirely unreasonable" or acting in bad faith to rely on it. *See United States v. Martin*, 297 F.3d 1308, 1313, 1315 (explaining suppression is necessary "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause" (citation and internal quotation marks omitted)); *Delgado*, 981 F.3d at 899. Therefore, even if the affidavit did not provide probable cause for the warrant, the

evidence seized pursuant to the search of the Google account would still be admissible per the *Leon* good faith exception.

## CONCLUSION

Of note, the practicality of this case greatly solves any overbreadth problem. The Government admitted at the May 5 hearing that all the fruits of the search that are going to be used are presently in the record. Defendant's concerns about overbreadth are assuaged because none of the other issues (*e.g.*, GPS location, etc.) will come into evidence. The warrant's step two limiting clause was followed strictly, and the seized items are clearly within the scope of a reasonable warrant.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Mr. Velez's motion to suppress evidence resulting from a search of his Google account, Dkt. 57, is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida, on July 9, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

18