UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    v.                                                                 Case No. 8:24-cr-456-WFJ-AAS

**REY DANNY VELEZ**,

    Defendant.
_____/

## ORDER

Before the Court is Defendant Rey Danny Velez's Motion to Suppress Incriminating Statements made to Deputy Andrew Poligo at Springbrook Hospital on August 29, 2024. Dkt. 102. The Government filed a response in opposition. Dkt. 108. Upon review of the record, Defendant's motion to suppress is denied in part and granted in part. The recorded portion of Defendant's statements to Deputy Poligo at the mental health facility, which is found at Dkt. 108-2, is not suppressed. However, the latter, unrecorded question-and-answer at that facility, in which Deputy Poligo asked Velez what were the suspicious "PVC devices with wicks coming out the ends," is suppressed because, at that point, the civil nature of Deputy Poligo's role had changed to a criminal investigation.

## LEGAL STANDARD

The Fifth Amendment right against compelled self-incrimination requires a warning to a subject in custody that he has the right to remain silent and the right to

1

the presence of an attorney before any interrogation. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). *Miranda v. Arizona requires* trial courts to "exclude from evidence any incriminating statements an individual makes before being warned of his rights to remain silent and to obtain counsel." *United States v. Luna-Encinas*, 603 F.3d 876, 880 (11th Cir. 2010); *see Miranda*, 384 U.S. at 444. But an individual is entitled to *Miranda* warnings only if he is in custody during questioning, *see Luna-Encinas*, 603 F.3d at 880, and subject to an interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980). On a motion to suppress alleging a violation of a subject's *Miranda* rights, the movant bears the initial burden of proving that he was in custody and subject to a custodial interrogation. *See United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004). The evidentiary burden at a suppression hearing is a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

This is a short background synopsis. The full, factual description is set forth in the parties' pleadings, *see* Dkts. 102, 108, and the evidentiary hearing that was held before the undersigned on December 23, 2025. Dkt. 115. Mr. Velez was involved in a domestic dispute and voiced some threats to a family member while in police presence. He was civilly committed under the Baker Act to a mental health facility and taken there in handcuffs. While he was at Springbrook Hospital, police obtained a civil "Risk Protection Order" ("RPO) that required him to surrender his

2

firearms and ammunition pending a state circuit court hearing. *See* Dkt. 108-1. This mental health order was civil in nature.

Deputy Poligo of the Hernando County Sheriff's Office and a colleague went, uniformed with full kit, to the mental health hospital to serve the RPO upon Mr. Velez and, if possible, to facilitate the gun and ammunition turn-over. In this regard, Poligo engaged Velez in a friendly discussion and explained his purpose for the visit. Mr. Velez cooperated in facilitating the peaceful turnover of the weapons. At this time, Mr. Velez was involuntarily committed and not free to leave the facility, although the meeting with Poligo occurred in an open-door office, and Mr. Velez was not restrained in any way beyond his inability to leave the mental health facility. Apparently, Mr. Velez was seated inside the office, with Deputy Poligo positioned closer to the open office door and Deputy Poligo's colleague positioned in the doorway or vestibule immediately outside the office.

Deputy Poligo surreptitiously recorded almost the entire encounter with Mr. Velez. As to the recorded portion, there were no *Miranda* warnings, but the encounter involved no interrogation (directly or subtly) nor any questioning of Mr. Velez that was reasonably likely to elicit an incriminating response. A friendly discussion ensued about the nature of the RPO and the turnover of the guns pursuant to the RPO. There was "small talk" about military service. The purpose of Deputy Poligo during this recorded event was entirely civil in nature, and he performed his civil

3

duties by providing explanatory notice and service and by seeking to facilitate compliance with the turnover requirements of the RPO. Deputy Poligo's tasks were akin to those of an ICE agent who conducted a civil interview in *United States v. Lopez-Garcia*, 565 F.3d 1306, 1317 (11th Cir. 2009) (finding no interrogation requiring a *Miranda* warning).

Unbeknownst to Deputy Poligo at the time, however, Mr. Velez was telling the deputy a false tale about prior military service. Mr. Velez's "I am Army" fantasy is part of the Government's pipe bomb case.

Upon completion of the RPO tasks, Deputy Poligo turned off the recording device. He then got a phone call from a deputy at Mr. Velez's storage shed, where the guns were located. There, the deputy found, in a canister, four sealed PVC pipes with wicks protruding from the ends. As Deputy Poligo understood the call, the deputy described the items as "suspicious" and asked Poligo to question Mr. Velez about the PVC pipes. In an unrecorded interrogation, Deputy Poligo asked Mr. Velez about these items. Mr. Velez provided an inconsistent and (per the Government's view) false exculpatory statement concerning the alleged pipe bombs. Mr. Velez told Poligo the four items were "fireworks starters." Apparently, in a later *Mirandized* interview, Velez stated that the items were rockets. The deputy left them in the shed, albeit temporarily, because she believed they were outside the scope of the RPO.

4

Most importantly, these items do not resemble firearms or ammunition in any way. They resemble pipe bombs. They are sealed 6" PVC pipes with detonation cord wicks protruding from one sealed end. Only upon X-ray can one see the BB shrapnel and black gun powder within. The RPO's civil mission for the deputies was to take custody of the guns and ammunition pending a later court hearing. The question as to the "suspicious" items— "Mr. Velez, what are these PVC items with wicks coming out?"—was not within the civil mission and was de hors the RPO. At that point, the questioning constitutes an interrogation into conduct that appears criminal and is not covered by, or within, the civil duties set forth by the RPO. *See United States v. Villegas-Tello*, 319 F. App'x 871, 875 (11th Cir. 2009) (quoting *Innis*, 446 U.S. at 301) (noting the Supreme Court has defined interrogation as "'express questioning' initiated by police officers or its 'functional equivalent,' namely 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'").

This was an interrogation, a question about pipe bombs likely to elicit an incriminating response. A closer issue is whether it was custodial in nature. *See United States v. Woodson*, 30 F.4th 1295, 1303 (11th Cir. 2022). The Court

concludes, on balance, that Mr. Velez was in custody at that time.[1] He had been detained in handcuffs and taken to the facility by deputies pursuant to the Baker Act. He was not free to leave the mental health facility and was unrestrained in an office with one uniformed deputy at the open doorway and the other sitting somewhat between him and the door. The question was directly criminal in nature and came about 60 minutes after a friendly discussion involving a civil matter. Under an objective view, *see e.g., Howes v. Fields,* 565 U.S. 499, 508–09 (2012), the environment was sufficiently custodial. Before asking Mr. Velez what the pipe bombs were, the deputies should have provided a *Miranda* warning.

This unrecorded portion of Deputy Poligo's encounter, where Velez is asked about the "suspicious" items, is suppressed. The Court acknowledges that this ruling regarding "custody" is a close call and comes close to "Monday-morning quarterbacking." However, the recorded portions of Mr. Velez's interview are not suppressed.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant's motion to suppress, Dkt. 102, is **GRANTED in part and DENIED in part**.

**DONE AND ORDERED** at Tampa, Florida, on December 26, 2025.

---

[1] Apparently, the case deputies also reached this conclusion, because once they realized what these items likely were, they visited the mental health facility and interrogated Mr. Velez with *Miranda* warnings.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**